**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Capstone Associated Services,** | § | |
| **Ltd.,** *et al.,* | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No. _____** |
| | § | |
| **Gary McNelley, David Rivero,** | § | **Jury Trial Requested** |
| **Market Health, Inc.,** *et al.,* | § | |
| | § | |
| **Defendants** | § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES
AND INJUNCTIVE RELIEF AND EXPEDITED MOTION TO COMPEL ARBITRATION
UNDER 9 U.S.C. § 4 AND MOTION TO STAY
OTHER PROCEEDINGS PURSUANT TO 9 U.S.C. § 3 AND MOTION TO CONFIRM
ARBITRATION AWARD**

TO THE HONORABLE COURT:

COME NOW, Capstone Associated Services, Ltd., together with its affiliate,

Capstone Insurance Management (Anguilla), Ltd. (a/k/a Capstone Insurance

Management, Ltd.) (collectively, "Capstone"), joined by PoolRe Insurance Corp.

("PoolRe"), and The Feldman Law Firm LLP and its lawyers (the "Firm") (collectively

Capstone, the Firm, and PoolRe are referred to as the "Plaintiffs") file this, their

**Original Complaint for Declaratory Judgment and Damages and Injunctive Relief and**

**Motion to Compel Arbitration Under 9 U.S.C. § 4 and Motion to Stay Other**

**Proceedings Pursuant to 9 U.S.C. § 3** against Defendants Gary B. McNelley,

individually and as Trustee of MC Trust dated April 4, 2007 ("McNelley"); Market

Health, Inc. ("Market Health"); David H. Rivero, individually, and as Trustee of an

unnamed trust dated March 28, 2007 ("Rivero"); MH Export Corp. ("MH Export");
Nutrition Casualty Corp. ("Nutrition"); Solution Casualty Corp. ("Solution"); Bowtrol
Corporation; Card Mutual Inc.; Daily Info Solutions, Inc.; Database Management, LLC;
Dermology Inc.; E-Affiliate, Inc.; GSCM Ventures, Inc.; Park Place Strategies, Inc.;
Provillus Corporation; Revitol Corporation; Wyoming Licensing Company, LLC; MC
Trust 2011 Irrevocable Trust dated November 1, 2011, Gregg McNelley, Trustee; and
David H. Rivero 2011 Irrevocable Trust dated November 1, 2011, Daniel A. Rivero,
Trustee (collectively, "Defendants").

Additionally, Capstone, PoolRe, and the Firm file their **Motion to Confirm
Arbitration Award** against Defendants David H. Rivero, Gary B. McNelley, MH Export
Corp. and Market Health, Inc., as well as (as set forth in the Arbitration Award) "each
and every person controlled by, controlling or under common control with or
benefitting from (e.g., an owner, partner, joint venturer, member or shareholder) any
of the Parties to this arbitration"[1] (collectively referred to herein as the "Market Health
Parties") under both the Federal Arbitration Act and the Texas Arbitration Act.

## I. PARTIES

1.      Plaintiff Capstone Associated Services, Ltd. is a Texas limited partnership
with its principal place of business in Houston, Texas.

2.      Plaintiff Capstone Insurance Management, Ltd. (Anguilla) a/k/a Capstone
Insurance Management, Ltd. is a British West Indies corporation with its principal place

---

[1]Arbitration Award attached as Exhibit 7 at 28.

of business in The Valley, Anguilla, British West Indies.

3.      Plaintiff PoolRe Insurance Corp. is an insurance company incorporated in Anguilla, the British West Indies.

4.      Plaintiff The Feldman Law Firm LLP is a Texas limited liability partnership with its principal place of business in Houston, Harris County, Texas.

5.      Defendant Gary McNelley is a California resident.  Defendant McNelley has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, McNelley may be served with process at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever he may be found.

6.      Defendant David Rivero is a California resident.  Defendant Rivero has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Rivero may be served with process at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever he may be found.

7.      Defendant Market Health, Inc. is a foreign corporation organized and existing under the laws of the state of California.  Market Health Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Market Health, Inc. has sufficient contacts

3

with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State.  Accordingly, Market Health, Inc. may be served with process by serving the Secretary of State of Texas, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Market Health, Inc. may be served with process by personally serving an officer of Market Health Inc. at its business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or by serving its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

8.    MH Export Corporation is a foreign corporation organized and existing under the laws of the state of Wyoming.  MH Export Corporation does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant MH Export Corporation has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State.  Accordingly, MH Export Corporation may be served with process by serving the Secretary of State of Texas, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, MH Export Corporation may be served with process by personally serving an officer of MH Export Corporation at its business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon its registered agent, InCorp Services, Inc. at 1621 Central Ave., Cheyenne, WY 82001.

9.    Nutrition Casualty Corp. is a foreign corporation organized and existing

under the laws of the state of Delaware.  Nutrition Casualty Corp. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Nutrition Casualty Corp. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Nutrition Casualty Corp.  may be served with process by personally serving an officer of Nutrition Casualty Corp. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon its registered agent, National Corporate Research, Ltd. at 615 S. Dupont Hwy., Dover, DE 19901.

10.   Solution Casualty Corp. is a foreign corporation organized and existing under the laws of the state of Delaware.  Solution Casualty Corp. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Solution Casualty Corp. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Solution Casualty Corp.  may be served with process by personally serving an officer of Solution Casualty Corp. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon the registered agent, National Corporate Research, Ltd. at 615 S. Dupont Hwy., Dover, DE 19901.

11.     Defendant Bowtrol Corporation[2] is a foreign corporation organized under the laws of the state of California.  Bowtrol Corporation does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant  Bowtrol Corporation has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Bowtrol Corporation may be served with process by personally serving an officer of Bowtrol Corporation at its business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon the registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

12.     Card Mutual, Inc. is a foreign corporation organized and existing under the laws of the state of California.  Card Mutual, Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant  Card Mutual, Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State.  Accordingly, Card Mutual, Inc. may be served with process by serving the Secretary of State of Texas, 1019 Brazos Street, Austin, Texas 78701.

---

[2] Upon information and belief, Bowtrol Corporation may have liquidated without satisfying its debts and liabilities, including those in this action.  As such, the shareholders of said corporation, McNelley and Rivero are believed to be liable for the actions of Bowtrol.  Plaintiffs reserve the right to amend their complaint accordingly following discovery on such issues.

6

Alternatively, Card Mutual, Inc. may be served with process by personally serving an officer of Card Mutual, Inc. at its business address at 4804 Laurel Canyon Blvd., Suite 565, Valley Village, CA 91607-3717 (which is a United Parcel Service maildrop) or 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon the registered agent David Symons at  4804 Laurel Canyon Blvd., Suite 565, Valley Village, CA 91607-3717.

13.    Daily Info Solutions, Inc. is a foreign corporation organized and existing under the laws of the state of California.  Daily Info Solutions, Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant  Daily Info Solutions, Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Daily Info Solutions, Inc. may be served with process by personally serving an officer of Daily Info Solutions, Inc. at its business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found or upon the registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

14.    Database Management, LLC is a limited liability company organized and existing under the laws of the state of Wyoming.  Database Management, LLC  does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Database Management, LLC  has

sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Database Management, LLC may be served with process by personally serving the registered agent of Database Management, LLC at its business address at 1712 Pioneer Ave., Cheyenne, WY 82001-4401 or wherever one of its officers may be found or by serving its registered agent Wyoming Corporate Services, Inc. at 2710 Thomas Ave, Cheyenne, WY 82001-3029.

15.     Dermology Inc. is a foreign corporation organized and existing under the laws of the state of California.  Dermology Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Dermology Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Dermology Inc. may be served with process by personally serving an officer of Dermology Inc. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found.  Alternatively, Dermology Inc. may be served with process by personally serving its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

16.     E-Affiliate, Inc. is a foreign corporation organized and existing under the laws of the state of Nevada.  E-Affiliate, Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process

8

in Texas.  Defendant E-Affiliate, Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, E-Affiliate, Inc. may be served with process by personally serving an officer of E-Affiliate, Inc. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found.  Alternatively, service can be had on its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

17.    GSCM Ventures, Inc. is a foreign corporation organized and existing under the laws of the state of Nevada.  GSCM Ventures, Inc. does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant GSCM Ventures, Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, GSCM Ventures, Inc. may be served with process by personally serving an officer of GSCM Ventures, Inc. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found.  Alternatively, service may be had on its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

18.    Park Place Strategies, Inc. is a foreign corporation organized and existing under the laws of the state of Wyoming.  Park Place Strategies, Inc. does not maintain

a regular place of business in the state of Texas and has not designated an agent for service of process in Texas. Defendant Park Place Strategies, Inc. has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701. Alternatively, Park Place Strategies, Inc. may be served with process by personally serving an officer of Park Place Strategies, Inc. at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found. Alternatively, service may be had on its registered agent, David Symons at 2049 N. Lincoln St., Burbank, CA 91504.

19.    Provillus Corporation is a foreign corporation organized under the laws of the state of California.  Provillus Corporation does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Provillus Corporation has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Provillus Corporation may be served with process by personally serving an officer of Provillus Corporation at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found.  Alternatively, service may be had on its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

10

20.     Revitol Corporation is a foreign corporation organized and existing under the laws of the state of California.  Revitol Corporation does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Revitol Corporation has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Revitol Corporation may be served with process by personally serving an officer of Revitol Corporation at his business address at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such officer may be found.  Alternatively, service may be had on its registered agent Robert M. Freedman at 15250 Ventura Blvd., Floor 9, Sherman Oaks, CA 91403-3221.

21.     Wyoming Licensing Company, LLC is a is a limited liability company organized and existing under the laws of the state of Wyoming.  Wyoming Licensing Company, LLC does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Defendant Wyoming Licensing Company, LLC has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, Wyoming Licensing Company, LLC may be served with process by personally serving an officer of Wyoming Licensing Company, LLC at his business address at 1712 Pioneer Ave., Cheyenne, WY 82001-4406 or wherever such officer may be found.  Alternatively,

service may be had on its registered agent, Wyoming Corporate Services at 2710 Thomas Ave., Cheyenne, WY 82001-3029.

22.    MC Trust 2011 Irrevocable Trust, Gregg L. McNelley, Trustee is a trust organized and existing under the laws of the state of California, which does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  MC Trust 2011 Irrevocable Trust, Gregg L. McNelley, Trustee  has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, this trust may be served with process by personally serving the trustee, Gregg L. McNelley at his residence at 29676 Woodlake Court, San Juan Capistrano, CA 92675 or at his business location at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such trustee may be found.

23.    MC Trust 2011 Irrevocable Trust, Gregg L. McNelley, Trustee, upon information and belief, is using a trailer park's post office box as its address (1983 Boggy Creek Road A-21, Kissimmee, FL 34744).  MC Trust 2011 Irrevocable Trust, Gregg McNelley, Trustee  has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, this so-called trust may be served with process by personally serving the trustee, Gregg L. McNelley at his residence at 29676 Woodlake Court, San Juan Capistrano, CA 92675 or at his

business location at 2049 N. Lincoln St., Burbank, CA 91504 or wherever such trustee may be found.

24.   David H. Rivero 2011 Irrevocable Trust, Daniel A. Rivero, CPA, Trustee is a trust organized and existing under the laws of the state of California, which does not maintain a regular place of business in the state of Texas and has not designated an agent for service of process in Texas.  Daniel A. Rivero is a California licensed CPA. David H. Rivero 2011 Irrevocable Trust, Daniel Rivero, Trustee has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701.  Alternatively, this trust may be served with process by personally serving the trustee, Daniel A. Rivero, CPA at his residence at 3945 Ramsdell Avenue, La Crescenta, CA 91214 or at his place of business 13701 Riverside Drive, No. 500, Sherman Oaks, CA 91423-2448 or wherever such trustee may be found.

25.   David H. Rivero 2011 Irrevocable Trust, Daniel A. Rivero, CPA, Trustee, upon information and belief, is using a trailer park's post office box as its address (1983 Boggy Creek Road A-21, Kissimmee, FL 34744).   David H. Rivero 2011 Irrevocable Trust, Daniel A. Rivero, CPA, Trustee has sufficient contacts with Texas under the Texas Long-Arm Statute so as to be able to be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701. Alternatively, this trust may be served with process by personally serving the trustee, Daniel A. Rivero, CPA at his residence at 3945 Ramsdell Avenue, La Crescenta, CA

13

91214 or at his place of business 13701 Riverside Drive # 500, Sherman Oaks, CA 91423-2448 or wherever such trustee may be found.

## II. Jurisdiction and Venue

26.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because this is the judicial district in which the events or omissions giving rise to the claims occurred.

## III. Motion to Confirm MH II Arbitration Award

28.     Federal Arbitration Act § 4 provides for an expedited hearing on five (5) days notice of a motion to compel arbitration.  In connection with such, Plaintiffs request that the Defendants be compelled to arbitrate the claims as set forth herein. This shortened statutory time provision is in furtherance of the fundamental purpose of the FAA which is to give effect to privately made agreements and to promote the expeditious resolution of disputes. *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985) (holding that the goal of giving effect to private agreements is the FAA's primary purpose over the expeditious resolution of claims although efficiency was expressly contemplated by Congress).  The Defendants in the second arbitration ("MH II") whose Arbitration Award is before the Court are:  David H. Rivero,

14

Gary B. McNelley, Market Health, Inc., MH Export Corp., Nutrition Casualty Corp.,and Solution Casualty Corp.  (collectively, the "Market Health Parties").  All of these entities are owned or controlled by either Defendant Rivero or Defendant McNelley or both of them.

29.    The Market Health Parties contracted jointly with Capstone and the Firm to provide services in connection with the design, formation, administration and operation of two property & casualty insurance companies.  In connection with those services, Capstone, the Firm and the Market Health Parties entered into at least **three written arbitration agreements**. *See* Engagement Agreement dated November 7, 2011, Engagement Agreement for IC-DISC services dated November 1, 2011, and Engagement Agreement for a feasibility study dated October 5, 2011, respectively, attached hereto as Exhibits 1, 2 and 3.  Each of these arbitration agreements are broad based and cover wide ranging issues which are to be arbitrated.

30.    Additionally, PoolRe and Capstone entered into **two other, separate and distinct written arbitration agreements with the Market Health Parties**. *See* Quota Share Insurance Policy dated December 16, 2011 and Quota Share Insurance Policy dated December 16, 2011, respectively attached hereto as Exhibits 4 and 5.

31.    Additionally, there is an arbitration agreement contained in the Common Policy Conditions attachment (Exhibit 6) which was incorporated into twenty-seven (27) insurance policies, which call for the arbitration of disputes between (x) Poolre and Capstone with (y) Nutrition and/or Solution and the various insureds.  It may not

15

be necessary for the Court to consider these additional twenty-seven arbitration agreements in connection with Plaintiffs' motion to confirm the MH II Arbitration Award relating to the second arbitration because the parties to this arbitration stipulated as to the jurisdiction of the arbitrator.[3]

32.    As is reflected in the MH II Arbitration Award (Exhibit 7, at 2), the Market Health Parties expressly consented to the MH II arbitration proceeding, and agreed on the specific arbitrator, E. Trey Bergman, the rules to be followed, the location of the arbitration, and the other procedural aspects of the arbitration. *See* MH II Arbitration Award, Exhibit 7, at 2 - 3:

**Jurisdiction and Arbitrability**

All parties announced at the commencement of the arbitration that they had no objections to this arbitration proceeding, the Arbitrator appointed by Conflict Resolution Systems, the Arbitrator hearing and ruling on all claims brought by all Parties, in this forum, at this time, and at this location in Houston, Texas. All Parties expressly waived any claims and objections they may have previously had regarding arbitrability, appointment of the Arbitrator, and the joinder of claims and proceeded with the Final Hearing.

Pursuant to the Agreements and the stipulations, the Parties are subject to the jurisdiction of the Arbitrator for all purposes and all claims and defenses asserted by the Parties.

The Parties agreed through the Arbitration Clauses to submit the resolution of their disputes to final and binding and non-appealable arbitration in accordance with the Rules.

The Arbitrator advised the Parties and their counsel that the transcript being prepared by the Court Reporter together with the Final Hearing exhibits would be the official record of the arbitration proceedings pursuant to Rule 26, Stenographic Record.

All Parties expressly reserved all claims and defenses they had in the third arbitration filed by the Claimants on December 20, 2013 pending before the Arbitrator (the "Third Arbitration").

---

[3]As explained below, the first arbitration was dismissed because the jurisdictional time limits expired.

*See* MH II Arbitration Award, Exhibit 7, at 2 - 3.  The Market Health Parties also had previously represented to this Court that they were cooperating in the MH II arbitration so there was no need to compel arbitration. *See* Order (of Dismissal) in Original Action (as defined below) dated September 30, 2013 [Doc. 15].  Thus, jurisdiction is not an issue herein as to confirmation of the MH II arbitration award.  As a result, only a truncated jurisdictional history follows.

33.     On March 7, 2013, Capstone filed a declaratory judgment action in the United States District Court for the Southern District of Texas, Houston Division to in Case no. 13-CV-00613 (the "Original Action") to compel the Defendants herein (being some of the Market Health Parties and among the respondents in the arbitration) to the First Arbitration, after Capstone perceived the Market Health Parties' reluctance to proceed with the pending arbitration in a timely manner.  Capstone had requested the Court to compel the Market Health Parties to arbitrate and abate the case pending returning to the Court for the confirmation of any award.  In its briefing, the Market Health Parties represented that they consented to and were cooperating in the pending arbitration before Mr. Bergman [Original Action, Doc. 4 at page 11 of that proceeding] and this Court dismissed for lack of subject matter jurisdiction on September 30, 2013. The arbitration then proceeded.

34.     On October 31, 2013, Arbitrator Bergman issued an order terminating the then pending "First Arbitration," without resolving the parties' disputes due to the four month jurisdictional time limit in which the arbitrator had to issue his award.

17

35.    On October 31, 2013, Plaintiffs filed a new arbitration demand with Conflict Resolution Systems, PLLC wherein its lead neutral, the Honorable Judge Dion Ramos, again assigned Arbitrator Bergman as arbitrator for the renewed arbitration (the " Second Arbitration" or "MH II").

36.    The Second Arbitration (MH II) culminated in the Arbitration Award dated March 6, 2014 following a five day hearing from February 17 through February 21, 2014 which followed intensive discovery. *See* Arbitration Award dated March 6, 2014, attached as Exhibit 7.  Again, the Market Health Parties, all affiliates of (owned and controlled by) Market Health, Inc.'s owners, David H. Rivero and Gary B. McNelley, all repeatedly consented to Arbitrator Bergman's jurisdiction (as did the Plaintiffs).

### Factual Background

37.    The Los Angeles, CA based Market Health Parties retained Plaintiffs for the purposes of designing, forming, implementing and operating in support of the McNelley and Rivero businesses: (i) two property & casualty captive insurance services; and (ii) an Interest Charged - Domestic International Sales Corporation ("IC-DISC") , all under Internal Revenue Code provisions.

38.    Plaintiffs entered into a multi-year agreement to form and administer two Delaware-regulated insurance companies wholly-owned by Defendants, Nutrition Casualty Corp. and Solution Casualty Corp.  McNelley and Rivero are the owners of multiple international marketing companies employing in excess of 300 full time

18

equivalent persons, generating approximately $45 million in revenue and $10 million in profits in 2012 alone.  The companies do business throughout the world selling so-called "nutraceuticals".  Plaintiffs were introduced to the Defendants (i) by Defendants' former CPA firm, whose lead engagement partner passed away about eight months later; and (ii) by its tax lawyer.  All marketing, design, product development and financial endeavors are covered by and ultimately owned by or held for the benefit of (through trust relationships) Defendants McNelley and Rivero, who operate more than a dozen business entities doing business in more than a dozen countries.  They are sophisticated business people involved in multi-national marketing efforts and employing multiple counsel.

39.    A dispute arose when the Market Health Parties demanded to renegotiate the terms of the parties' contracts in the second year of the multi-year term of the parties' contracts after an aggressive up-front negotiation.  The Firm and Capstone declined to do so.  After being unable to resolve the dispute, the Claimants filed for arbitration.  The dispute principally arose out of three contracts, those dated October 5, 2011 (Ex. 3, signed by Mr. McNelley on October 11, 2011), November 7, 2011 (Ex. 1, signed by Messrs. Rivero and McNelley on November 8, 2011), and November 1, 2011 (Ex. 2, signed by Mr. Rivero on December 1, 2011). The Market Health Parties brought a wide range of counterclaims against PoolRe, Capstone, the Firm, and Mr. Feldman complaining about every thing that had been done by the Claimants and asserting that this was the reason for their otherwise naked breach of contract.

The multiple entities are designed to distance McNelley and Rivero from the ultimate sale of the products locally throughout the U.S. and the world, using a series of web site shells operated by "affiliates" or vertical marketing participants in the local countries with 50/50 revenue splits.  Further, the unusually number of inter-related entities was designed according to McNelley and his advisors to establish a level of asset protection designed to ward off claimants, creditors and ex-spouses.  To be sure, even the Plaintiffs as advisors to the Respondents were confused in that the main operating entity of the Respondents is not Market Health, Inc. but rather the obscure GSCM Ventures, Inc., which the Respondents refused to allow to be a party to the second arbitration.  Additionally, because of the reluctance of banks to do business with merchants selling products like those sold by the Market Health Parties, especially by mail order, and in an effort to distance themselves from regulatory authorities, the Market Health Parties have created these multiple webs of companies which continue to be formed and then liquidated and then other companies established in their stead on a regular basis.  However, all marketing, design, product development and finance are covered by and ultimately owned by or held for the benefit of (through trust relationships) McNelley and Rivero, operating more than a dozen business entities doing business in more than a dozen countries where they sell creams, ointments and pills purportedly having U.S. regulatory approval because of their promoting their manufacture in the greater Los Angeles area.  Many of these products claim to have unique or magical sexual and physical results.  See, for example,

20

www.markethealth.com.

40.     After much foot dragging and objections by the Market Health Parties to the arbitration, arbitration proceedings were reconstituted as a renewed arbitration in October 2013 in accordance with the arbitration agreements.[4] The arbitrator ultimately ruled in the Plaintiffs' favor and entered monetary amounts consisting of both damages and the recovery of attorney's fees and expenses aggregating approximately $1.4 million along with multiple declarations.   The MH II Arbitration Award is attached hereto as Exhibit 7.

### Argument

41.     In 2008, the U.S. Supreme Court ruled that §§ 10 and 11 of the Federal Arbitration Act ("FAA") provide the exclusive grounds for vacatur and modification of arbitration awards.  *See Hall Street Assoc., L.L.C. v. Mattel,* 552 U.S. 576, 2008 LEXIS 2911 (Mar. 25, 2008) (emphasis added).   This Court should confirm the Arbitration Award because, in an instance where the arbitration agreement covers any and all disputes whatsoever of the parties, there cannot be a situation where as a matter of law that the arbitrator exceeded his authority.  The MH II Arbitration Award must be confirmed absent the Market Health Parties making a showing under FAA §§ 10, 11, which they have not.

42.     A court's review of an arbitrator's award is extremely narrow. *Kergosien*

---

[4] *See* Exhibits 1 - 6 which constitute the six separate arbitration agreements between Plaintiffs and the Market Health Parties that were before Arbitrator Bergman in the now completed MH II arbitration which resulted in the Arbitration Award.

v. *Ocean Energy, Inc.,* 390 F.3d 346, 352 (5th Circ. 2004); *Presitige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 393 (5th Cir. 2003).  If an award is rationally inferable from the facts before the arbitrator, the award must be affirmed. *See Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 412 (5th Cir. 1990). All doubts regarding sustainability of an award must be resolved in favor of the arbitration process.  *See Six Flags Over Texas v. International Bhd. Of Elec. Workers, Local 116*,143 F.3d 213, 215 (5th Cir. 1996).  The Fifth Circuit has held that whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn the proceedings without a sound statutory basis for doing so. *Prestige Ford*, 324 F.3d at 394.

43.     An arbitrator's role is functionally equivalent to that of a judge. *Olson v. NASD*, 85 F.3d 381, 382 (8th Cir. 1996).  When an arbitration agreement gives an arbitrator authority to interpret and apply a contract, the arbitrator's construction of that contract must be enforced so long as it is "rationally inferable from the letter or purpose of the underlying agreement." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).  In the case at bar, the arbitrator reviewed the parties' agreements and concluded that he has the authority to make his findings. *See* Ex. 7, p. 1-3. The arbitrator's decision in this regard must be respected by this Court. *Davis*, 26 F.3d at 1320.  An arbitrator's authority is derived from the arbitration agreement, and his decision is limited to the authority set forth in the agreement, either expressly or by necessary implication. *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import*

*Co.*, 927 S.W.2d 31, 35 (Tex. App. B Houston [1st Dist.] 1995, no pet.) (citing *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 142-43, 327 S.W.2d 406, 408 (Tex. 1959)). Here, the parties have agreed to arbitrate 'any and all disputes' arising out of an agreement, making it difficult to fathom that any court could find that the arbitrator has exceeded his authority. *See* attached Exhibits 1-6.

44.    In deciding whether the arbitrator exceeded his jurisdiction, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). In *Waverly Mineral Products Co. v. United Steel Workers of America, AFL-CIO, Local No. 8290*, 633 F.2d 682 (5th Cir. 1980), the district court determined that the issue before the arbitrator was not amenable to arbitration. This court reversed and held that the district court had "ignored the strong presumption favoring arbitrability. . . ." *Id.* at 684.

### U.S. Supreme Court Decisions

45.    In *Mattel*, the U.S. Supreme Court directed that the plain language of FAA §§ 9, 10, and 11 is to be interpreted precisely as written. "Under the terms of §9, a court ' must' confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Mattel,* 552 U.S. 576, 2008 LEXIS 2911, at *11 (quoting the FAA, 9 U.S.C. §10(a), §11 (2000 ed)). In writing for the majority, Justice Sutter stated the statutory grounds for vacatur and

modification of arbitration awards are limited to the "prescribed" exceptions listed in the FAA, and instructed lower courts as follows:

> expanding the detailed categories would rub too much against the grain of the §9 language, where provision for judicial confirmation carries no hint of flexibility. On application for an order confirming the arbitration award, the court " must grant" the order " unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about " must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies . . . .

*Id.*, at *20 (emphasis added).  Thus, this Court is required to confirm the arbitration award in this case.

46.  In *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064 (2013), an arbitrator was given authority to construe the parties' agreements as to all claims and the gateway issue of arbitrability. *Oxford Health Plans LLC*, 133 S.Ct. at 2067 (2013).[5] After the arbitrator determined a class action suit was arbitrable, Oxford Health moved to vacate the decision claiming the arbitrator overreached his authority. *Id.* The

---

[5]      For comparison, Plaintiffs submit excerpts of Oxford Health' s and the parties' arbitration agreements:

> " No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator." *See Oxford Health* at 2067.

> "With respect to any and all other disputes or claims whatsoever between us related to or arising out of our services ... such shall be submitted to a recognized, neutral, arbitral association or arbitrator for resolution pursuant to its single arbitrator expedited rules. ... The parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person. That is, the question of whether a dispute itself is arbitrable shall be decided solely by the arbitrator and not, for example, by any court. In so doing, the intent is to divest the courts of all powers in disputes involving the parties, except for the confirmation of the award and enforcement thereof. The courts shall have no jurisdiction over legal or equitable (including injunctive) matters." *See* Exhibits 1 and 2.

Supreme Court unanimously upheld the arbitrator's decision " because the parties ' bargained for the arbitrator's construction of their agreement,' an arbitral decision ' even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)mertis." *Id.* at 2068 (citing *Eastern Associated Coal Corp. V. Mine Workers*, 121 S.Ct. 462 (2000)).

47.    In this case, (i) there are more than five (5) arbitration agreements between the parties; (ii) the arbitrator has the sole and exclusive right to determine arbitrability under the terms of both the parties' agreements and their adoption of the American Arbitration Association's rules, including Rule 7 and the rules for emergency relief (*See* Exhibits 1 and 2); and (iii) the arbitrator's decision must be examined in light of the standard set out by the Supreme Court in *Oxford Health.* " The arbitrator's construction holds, however good, bad, or ugly." *Oxford Health*, at 2070. Additionally, in the case at bar the parties all stipulated as to the arbitrator's subject matter and personal jurisdiction to hear the disputes before him.

48.    This Court must follow the Supreme Court's ruling in *Oxford Health* which provides courts must uphold an arbitrator's decision when the arbitrator construes the contract " focusing, per usual, on its language." *Id.* at 2070. The Supreme Court further explains that " convincing a court of an arbitrator's error – even his grave error – is not enough .. [s]o long as the arbitrator was ' arguably construing' the contract ... a court may not correct his mistakes under § 10(a)(4)." *Id.*

25

49.    The Defendants have not made a complaint against confirmation within the scope of FAA §§ 10, 11.  Nor does there exist any basis for Defendants to enter such a complaint.

50.    As a result, the MH II Arbitration Award should be expeditiously confirmed by this Court because "[t]here is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "pre prescribed" exceptions applies." *Mattel*, 552 U.S. 576, 2008 LEXIS 2911 at *20 (emphasis added). Accordingly, Plaintiffs respectfully request this Court to promptly confirm the MH II Arbitration Award.

### IV. Motion to Compel MH III Arbitration Pursuant to 9 U.S.C. § 4 and Motion to Stay Other Proceedings Pursuant to 9 U.S.C. § 3

51.    Pursuant to Federal Rule of Civil Procedure 1, Southern District of Texas Local Rules 7.1 and 16.1 and 9 U.S.C. §§ 4 & 6, Plaintiffs hereby move the Court to compel arbitration of MH III.

52.    Plaintiffs entered into a multi-year agreement to form and administer two Delaware-regulated insurance companies wholly-owned by Defendants, Nutrition Casualty Corp. and Solution Casualty Corp.  McNelley and Rivero are the owners of multiple international marketing companies employing in excess of 300 full time equivalent persons, generating approximately $45 million in revenue and $10 million in profits in 2012 alone.  They are sophisticated business people involved in multi-national marketing efforts and employing multiple counsel.

53.    Defendants McNelley and Rivero made agreements on behalf of (1) the

three entities being formed (the two captive insurance companies and the IC-DISC); (2) the owners of those entities; and (3) affiliates of McNelley and Rivero (the expected insureds) that Defendants were to be provided joint services by Capstone and the Firm. The insureds include Defendants Bowtrol Corporation, Card Mutual Inc., Daily Info Solutions, Inc., Database Management, LLC, Dermology Inc., E-Affiliate, Inc., GSCM Ventures, Inc., Park Place Strategies, Inc., Provillus Corporation, Revitol Corporation, and Wyoming Licensing Company, LLC (collectively, the "Insureds"), all of which became the named insureds under the property & casualty policies issued.  McNelley is the owner of Nutrition Casualty Corp., a Delaware-regulated insurance company. Rivero is the owner of Solution Casualty Corp., also a Delaware-regulated insurance company. McNelley (or entities which he controls) is the 50% owner of the Insureds. with Rivero (or entities he controls) who owns the other 50% owner of the Insureds (collectively, with the 2007 Trusts and the 2011 Trusts, the "Owners").

54.    In their MH III arbitration demand, Plaintiffs sought to join the McNelley's and Rivero's affiliates and related entities (including the Owners and the Insureds) of McNelley, Rivero, Market Health and the other Market Health Parties in the arbitration in order to bring closure to the matters in dispute.  The affiliates are the Insureds and Owners (both as defined below).  The arbitrator ruled that Plaintiffs would need to bring a separate arbitration demand against these parties. Accordingly, in December 2013, Plaintiffs initiated a separate arbitration demand, referenced as MH III, against the Insureds and the Owners.

55.    On March 19, 2014 at the urging of the Insureds and the Owners the arbitrator dismissed the Plaintiffs' claims against the Insureds and the Owners, who are among the Defendants herein, in the MH III arbitration in their entirety "for lack of arbitrability." *See* Exhibit 8.   The arbitrator dismissed the arbitration for a lack of arbitrability without the benefit of complete argument, without the benefit of all of the arbitration provisions before him,  and while all parties had asked the arbitrator for time to complete their briefing.

56.    Contrary to Arbitrator Bergman's analysis, the Joint Underwriting Stop Loss Endorsements dated December 15, 2011 from the MH III Arbitration (included in Exhibits 4 and 5 attached) were signed by McNelley and Rivero, respectively, on behalf of the "Insured(s)" covered by that agreement —the Insureds that were named as Respondents in the MH III Arbitration Demand.  Both Joint Underwriting Stop Loss Endorsements contain arbitration provisions.  *See* Exhibits 4 and 5. The arbitration agreements contain the following signatures which apparently the arbitrator missed in his review of the voluminous documents:

"INSURED(S)"                                            "INSURED(S)"


By:_____                By:_____
Authorized Representative                      Authorized Representative

28

*See* p. 7 and Exhibit 5, at p. 7.  Therefore, this uncontroverted evidence establishes that McNelley and Rivero, respectively, signed Joint Underwriting Stop Loss Endorsements as authorized representatives of the Insureds.  *Id.*

57.    Additionally, both Joint Underwriting Stop Loss Endorsements incorporate by reference the Insureds' various policies – more than 20 of them – each of which incorporate the Common Policy Conditions (Exhibit 6).  The Common Policy Conditions contains its own arbitration agreement.  Exhibit 6 at p. 2.

58.    In addition to these several arbitration agreements, each of the Insureds are listed on the declaration pages of the more than 20 policies from 2011 and 2012 and 2013 (a few exemplars are attached as Exhibit 9).  The Insureds (which are expressly listed) accepted and paid for coverages under these insurance policies and therefore are subject to the arbitration provisions contained therein.  These policies also incorporated in the Common Policy Conditions (Exhibit 6) and are in many cases jointly underwritten by PoolRe under the Quota Share Agreements (Exhibits 4 and 5).  Capstone's and PoolRe's signatures appear on the Quota Share agreements (that contain the arbitration provisions) to which are attached these 20 policies which also contain separate arbitration agreement.  The Insureds accepted and paid for these policies and are therefore bound by their terms.  Among the issues decided by the arbitrator in the MH II arbitration is that the reinsurance pool properly excluded insureds affiliated with McNelley and Rivero.  Exhibit 7.  Plaintiffs seek a determination of their rights as to the Insureds,  which were not parties in MH II but were parties

in the MH III arbitration.  Plaintiffs' claims against the Insureds and Owners were not adjudicated (as opposed to the parties having arbitrated the rights of the captive insurers, Nutrition and Solution, and persons controlled by McNelley and Rivero).

59.     There is an additional arbitration agreement in the engagement letter dated November 7, 2011 (excerpted as Exhibit 1).  This engagement letter is signed by both McNelley and Rivero.  The engagement letter states:

> Our Firm's work and Capstone's activities, as described below, will be performed in our collective multiple capacities on behalf of, as appropriate: (i) the **owners** of the captive insurer in connection with the formation of the captives; (ii) MH and certain of its affiliates as the **insureds**; and (iii) the captives, Pharma [later renamed Solution] and Nutrition, as the **insurers**.

Exhibit 1, at p. 2 (emphasis added).  Thus, the Insureds and the Owners are bound by the arbitration laden engagement agreement in the MH III arbitration.

60.     Nonetheless, the arbitrator concluded perhaps with incomplete information before him but certainly erroneously, perhaps because the briefing was not complete and argument had not yet been scheduled, that he lacked the ability to adjudicate the dispute because the Insureds had not signed the arbitration agreements. Apparently, the arbitrator overlooked the signatures above. *See* Exhibit 4, at p. 7 and Exhibit 5, at p. 7.  Thus, the arbitrator's conclusion that the insureds had not signed an arbitration agreement is incorrect. There are another 20+ arbitration agreements that benefit the Defendants herein which have not been briefed for the arbitrator.

61.     Under general principles of contract law, separate agreements executed

contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together.  *Neal v. Hardee's*, 918 F.2d 34, 36, 38 (5th Cir. 1990). Thus, the broad based arbitration clause in the Engagement Agreement dated November 7, 2011 (Exhibit 1) covering any and all disputes between the parties covers all disputes related to the subject matter of the entire transaction between Plaintiffs and Defendants including, without limitation, Plaintiffs' claims against the Defendants in MH III under any agreement without an arbitration clause. *See Pers. Sec. & Safety Sys. Inc. v. Motorloa Inc.*, 297 F.3d 388, 395 (5th Cir. 2002); *Neal v. Hardee's*, 918 F.2d 34, 36, 38 (5th Cir. 1990).

62.    The Defendants are also bound to arbitrate under the direct-benefits estoppel theory. Ordinary principles of contract and agency law may bind a non-signatory to arbitrate under written agreements that call for arbitrating disputes. *See Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 694–95 (S.D. Tex. 2013). Direct-benefits estoppel establishes one basis for binding a non-signatory to an arbitration agreement, as does incorporation by reference. *See Bridas S.A.P.I.C. v. Gov' t of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir. 2003). Texas law has long recognized direct-benefits estoppel as a ground for requiring a non-signatory to arbitrate. *See In re Weekley Homes, LP*, 180 S.W.3d 127, 132–33 (Tex. 2005); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001). So has the Fifth Circuit. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *see also Blaustein v. Huete*, 449 Fed. Appx. 347, 350 (5th Cir. 2011). Direct-benefits

estoppel applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Blaustein*, 449 Fed. Appx. at 350 (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006)).

63.    Additionally, a non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d at 473 (5th Cir. 2010)).   Certainly, accepting the benefits under an insurance contract for which a party pays would satisfy the notion of the Defendants "having embraced the contract." These parties sought out direct benefits under the applicable contracts as they sought out (and ultimately obtained) insurance provided by the Firm/Capstone's program. *See* Exhibits 4 and 5.

64.  Federal Arbitration Act § 4 provides for an expedited hearing on five (5) days notice of a motion to compel arbitration.  In connection with such, Plaintiffs request that the Defendants be compelled to arbitrate before the arbitrator selected by the sponsoring arbitral organization.

65. This shortened statutory time provision is in furtherance of the fundamental purpose of the FAA which is to give effect to privately made agreements and to

promote the expeditious resolution of disputes. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985) (holding that the goal of giving effect to private agreements is the FAA's primary purpose over the expeditious resolution of claims although efficiency was expressly contemplated by Congress). In connection with FAA § 4, Plaintiffs request the Defendants be ordered to appear and participate in the pending arbitration proceedings.  Plaintiffs seek a specific order of a federal court enforcing Defendants' participation in the pending arbitration.

66.  The FAA limits the role of courts in evaluating questions of arbitration and also provides for special procedures to be followed with respect to a motion to compel. *See* 9 U.S.C. §§ 4, 6; *T & R Enterprises, Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1275 (5th Cir. 1980)*; BAE Systems Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004).  Expediting Plaintiffs' Motion complies with the FAA's goals and procedures.  *See Grant v. Houser,* 469 Fed. Appx. 310, 315 (5th Cir. 2012)*; Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 481-82 (E.D. Pa. 2011) ("The Arbitration Act calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." (quoting *Moses H. Cone Mem' l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 29 (1983)).

67.  Plaintiffs request the Court upon the required five (5) days notice provided for in FAA § 4, refer the matter back to Judge Ramos with Conflict Resolutions for assignment to arbitration based upon these almost thirty arbitration agreements which bind the parties and order the Defendants to participate in the pending MH III

arbitration so as to enforce the parties agreement as to the chosen dispute resolution forum and the expedited relief they bargained for.  Plaintiffs have filed a renewed demand for arbitration in MH III with Conflict Resolutions or, in the alternative, a new demand for arbitration in MH IV.  *See* Claimants' Renewed Arbitration Demand and Claimants' New Arbitration Demand dated March 25, 2014, filed with the Appointing Arbitral Organization: Conflict Resolution Systems, PLLC, Hon. Dion Ramos, attached as Exhibit 10.

68.  As to the request herein under FAA § 3, Plaintiffs request that Defendants and all persons acting on their behalf be ordered to stay all matters in all other courts pending the decision of the Arbitrator.  9 U.S.C. §3 provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3 (emphasis added).  So that Plaintiffs need not litigate this issue in multiple courts in multiple jurisdictions, Plaintiffs request that the Court enter an order under 9 U.S.C. §3 prohibiting Defendants from proceeding in any court other than this Court pending this Court's further rulings or confirmation of the MH III arbitration award.

### V.  Complaint for Damages and Declaratory Judgment and Injunctive Relief

69.  Subject to Plaintiffs' motion to compel the Defendants to participate in

the pending MH III arbitration so as to enforce the parties' agreement as to the chosen dispute resolution forum and the expedited relief they bargained for, and subject to the Plaintiffs' request that the Court enter an order under 9 U.S.C. §3 prohibiting Defendants from proceeding in any court other than this Court pending this Court's further rulings or confirmation of the MH III arbitration award, the Plaintiffs seek the following relief herein.

## Count I
## Breach of Contract

70.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 69 above as if fully set forth herein.

71.     Plaintiffs and Defendants entered into written contracts.

72.     Plaintiffs satisfactorily performed all aspects of their obligations, and Plaintiffs satisfactorily performed any conditions, covenants, and promises required on their part to be performed.

73.     Defendants materially breached their contracts with Plaintiffs by failing and refusing to pay the full amount of the payments due under the contracts. As a direct and proximate cause of Defendants' material breaches of contract, Plaintiffs have suffered damages.

**Count II**
**Quantum Meruit**

74.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 73 above as if fully set forth herein.

75.    Between November 2011 and March 2013, Plaintiffs actually provided valuable services to Defendants under the parties' contracts. Defendants have benefitted from the services they received from Plaintiffs. Plaintiffs provided the services as requested by Defendants, and Plaintiffs are entitled to the reasonable value of their services provided.

76.    Despite Plaintiffs' demands, Defendants have failed and refused to pay the reasonable value of the services provided to them by Plaintiffs.

**Count III**
**Declaratory Judgment Under 28 U.S.C. § 2201**

77.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 76 above as if fully set forth herein.

78    Under the Declaratory Judgment Act, the court " may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A justiciable controversy exists between the parties that can presently be litigated and decided by this Court.

79.    Under 28 U.S.C. § 2201 of the Declaratory Judgment Act, Plaintiffs seek the following declaratory judgment relief:

A. Capstone, the Firm, and PoolRe, individually and each of them, seek declaratory judgments that they have no liability to Defendants arising out

36

of or related in any way to the services performed, policies underwritten, or pooling arrangements in which Defendants participated or did not participate in or otherwise.

B. The Firm, Capstone, and PoolRe, individually and each of them, seek a declaratory judgment that Defendants are jointly and severally liable for the arbitration award entered on March 6, 2014, a true and correct copy of which is attached hereto as Exhibit 7 and is incorporated herein by reference.

C. Plaintiffs further seek declaratory judgments that Plaintiffs committed no act of negligence, gross negligence, malpractice, breached any contract, committed any fraud, or violated the Deceptive Trade Practices Act as pled by the Respondents' in their November 8, 2013 AAA arbitration demand which was ultimately withdrawn.

## Count IV
## Request for Injunctive Relief

80.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 79 above as if fully set forth herein.

81.    Plaintiffs seek a preliminary injunction against Defendants, individually and collectively, enjoining each and every Defendant from taking any action inconsistent with the Arbitration Award entered on March 6, 2014 ("Arbitration Award") in any forum and in any proceeding or matter, and further enjoining each and every entity owned by, controlled by, controlling or under common control with or benefitting from (e.g., an owner, partner, joint venturer, member or shareholder) any Defendant. *See* Exhibit 7.

82.    Plaintiffs seek a permanent injunction against Defendants, individually and collectively, permanently enjoining each of them from taking any action inconsistent with Arbitration Award in any forum and in any proceeding or matter, and further

enjoining each and every entity owned by, controlled by, controlling or under common control with or benefitting from (e.g., an owner, partner, joint venturer, member or shareholder) any Defendant.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against the Defendants, jointly and severally, and award Plaintiffs the following relief:

a.  That the Court forthwith enter judgment confirming the MH II Arbitration Award as made by the arbitrator;

b.  That the Court enter an order pursuant to 9 U.S.C. § 4 referring the matter back to Judge Ramos with Conflict Resolutions for assignment to arbitration and ordering the Defendants to participate in the MH III or MH IV arbitration;

c.  That the Court enter an order under 9 U.S.C. §3 prohibiting Defendants from proceeding in any court other than this Court pending this Court's further rulings or confirmation of the MH III arbitration award or MH IV award;

d.  In the alternative, that the Court enter Judgment in Plaintiffs' favor against Defendants for breach of contract;

e.  In the alternative, that the Court enter Judgment in Plaintiffs' favor against Defendants for quantum meruit;

f.  In the alternative, that the Court enter Judgment in Plaintiffs' favor against Defendants for damages as proven at trial;

g.  In the alternative, that the Court enter the declaratory judgment relief requested by Plaintiffs herein pursuant to 28 U.S.C. § 2201;

h.  In the alternative, that the Court enter preliminary and permanent injunctive relief as requested by Plaintiffs herein;

i.  In the alternative, that the Court enter Judgment awarding Plaintiffs' reasonable and necessary attorney's fees and costs; and

j.    Such other and further relief to Plaintiffs which this Court deems just, proper, and equitable.

Respectfully submitted,

_____/s/ John R. Craddock_____
John R. Craddock
State Bar No. 04969800
Stewart A. Feldman
State Bar No. 06887600
Joseph F. Greenberg
State Bar No. 24059856
THE FELDMAN LAW FIRM LLP
Two Post Central
1980 Post Oak Blvd., Suite 1900
Houston, Texas  77056-3850
713.850.0700 ▪ 713.850.8530 (fax)

**ATTORNEYS FOR THE FELDMAN LAW FIRM LLP**

_____/s/ L. Andy Paredes_____
L. Andy Paredes
State Bar No. 00788162
Two Post Central
1980 Post Oak Blvd., Suite 1950
Houston, Texas  77056-3850
713.800.0550 ▪ 713.623.0329 (fax)

**ATTORNEY FOR THE CAPSTONE ENTITIES AND POOL RE INSURANCE CORP.**

## Exhibit List

Exhibit 1 -   Engagement Agreement dated November 7, 2011

Exhibit 2 -   Engagement Agreement for IC-DISC services dated November 1, 2011

Exhibit 3 -   Engagement Agreement for Feasibility Study dated October 5, 2011

Exhibit 4 -   Joint Underwriting Stop Loss Endorsement/Quota Share Reinsurance Agreement for Nutrition dated December 15, 2011 signed by McNelley on behalf of Insureds

Exhibit 5 -   Joint Underwriting Stop Loss Endorsement/Quota Share Reinsurance Agreement for Nutrition dated December 15, 2011 signed by Rivero on behalf of Insureds

Exhibit 6 -   Common Policy Conditions contained in more than twenty insurance policies.

Exhibit 7 -   Arbitration Award in MH II dated March 6, 2014

Exhibit 8 -   Arbitrator's order of arbitrability in MH III dismissing Plaintiffs' claims against the Insureds and Owners dated March 19, 2014

Exhibit 9 -   Exemplars of Insureds listed on declaration pages of insurance policies

Exhibit 10 -   Claimants' Renewed Arbitration Demand and Claimants' New Arbitration Demand dated March 25, 2014 filed with the Appointing Arbitral Organization: Conflict Resolution Systems, PLLC, Hon. Dion Ramos